**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| LEVAR PAYTON, #411-397 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-15-3863 |
| OFFICER LAMP, CLOTHING ROOM | * | |
| Defendant | * | |

***

**MEMORANDUM**

Plaintiff Levar Payton, a prisoner incarcerated within the Maryland Division of Correction ("DOC") and housed at North Branch Correctional Institution ("NBCI"), filed a civil rights action pursuant to 42 U.S.C. § 1983, seeking money damages[1] from the defendant, Officer Joseph Lamp, a correctional supply officer at NBCI. ECF 1. In his unverified Complaint, Payton alleges that Lamp refused to provide him with appropriate clothing and shoes, provided mildewed sheets and a jumpsuit, and on one occasion during a clothing exchange slammed Payton's hand in the feed slot while using vulgar, sexually inappropriate language. ECF 1.

Lamp has filed an unopposed motion to dismiss or, in the alternative, a motion for summary judgment. ECF 7.[2] It is supported by a memorandum (ECF 7-1) (collectively, the

[1] Payton also requests injunctive relief mandating his release from solitary confinement and immediate release from incarceration. ECF 1 at 3, ¶ IV. These requests are outside the scope of this Complaint, which concerns a clothing problem at NBCI. To the extent that Payton seeks release from incarceration, he may file a petition for writ of habeas corpus after exhausting his state appellate and post-conviction remedies. Payton should file any claim concerning solitary confinement in a new lawsuit, and may request injunctive relief there. Such action should be filed after Payton completes administrative exhaustion of that claim.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on February 23, 2016, the Clerk of Court informed Payton that defendant had filed a dispositive motion; that Payton had seventeen days in which to file written opposition to the motion; and that if Payton failed to respond, the claim against defendant could be dismissed, without further notice. ECF 8. Payton has not responded.

"Motion") and several exhibits.

No hearing is needed to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, I shall construe the Motion as one for summary judgment and shall grant it.

## I. Factual Summary

Payton is housed in segregation, and his ability to obtain clothing and hygiene material is restricted. NBCI segregation prisoners may exchange two tee shirts, two pairs of underwear, and two pairs of socks every six to eight months upon request. ECF 7-4 (DOC Clothing Directive), at 2.[3] On January 6, 2015, Payton received, as requested, four undershirts, three undershorts, two pairs of socks, a pair of shoes, two pairs of thermal underwear, four newspapers, two towels, two washcloths, four pens, one comb, one toothbrush, a cap, two toothbrushes, toothpaste, six bars of soap, a plastic soap dish, twelve packets of shampoo, two packets of deodorant, twelve packets of shaving cream, a bowl, a cup, three rolls of toilet paper, and a sheet set. ECF 7-3 (Declaration of Randy Durst, Correctional Case Manager II), at 2.

In August of 2015, Payton placed an order to exchange socks, tee shirts, and boxer underwear. ECF 7-5 (Declaration of Joseph Lamp). On August 11, 2015, he received two pairs of socks and two tee shirts. However, because the clothing room was out of boxers in Payton's size, he was not provided with the requested underwear. *Id.*

On November 24, 2015, Payton filed an administrative remedy procedure ("ARP") request, claiming that he had been requesting underwear monthly for six months, yet had not received new underwear. ECF 7-3 (ARP NBCI-2517-15 Response dated 12/29/15), at 4-5. An investigation undertaken in response to the ARP determined that Payton requested a clothing

[3] This Memorandum reflects the pagination assigned by the court's electronic docketing system.

exchange for boxer underwear in August of 2015, but the prison supply department was out of stock. Payton did receive socks and tee shirts on August 11, 2015, and received the boxers plus a knit hat on December 8, 2015. Additional socks and tee shirts were later denied because the prison was on lock-down and the assistant warden indicated that used clothing could be exchanged for new clothing only after a period of six to eight months, pursuant to an institutional directive. ECF 7-3 at 4; ECF 7-4 at 2.

Payton filed an additional ARP on December 5, 2015, stating that he had no shoes and no clothing, except a "filth[y] orange suit," and that his bedding was mildewed. ECF 7-3, ARP NBCI-2518-15 at 8-9. The ARP Coordinator dismissed the ARP on December 22, 2015, and instructed Payton to resubmit it with additional information. *Id.* Payton did not resubmit the ARP, nor did he appeal the decision to the Commissioner of Correction. ECF 7-6 (Declaration of Christina Ripps, Correctional Case Management Specialist), at ¶ 2.

On December 8, 2015, Lamp went to Payton's cell, opened the slot, and handed Payton his December clothing request slip, which Payton signed and returned. ECF 7-3 at 12 (Report of J. Lamp, dated 12/8/15). Lamp then handed Payton two new pairs of extra-large boxers and an extra-large knit hat, as requested. *Id.* at 13; ECF 7-4 (ARP NBCI-2517-15), at ¶ 4. The sneakers, blue jeans, and shirt that Payton had requested were not provided, however, because Payton was in disciplinary segregation. ECF 7-3 at 12-13. Payton and Lamp argued over the clothing that had not been provided, and Payton refused to allow Lamp to close the slot. *Id.* Lamp informed the control center officer about the situation, and was instructed to place a security shield in front of Payton's cell. *Id.*

Lamp denies that he ever assaulted Payton in any way, used vulgar sexual verbal insults against Payton, or tried to slam Payton's hand in the slot. Lamp Decl., ECF 7-5 at ¶ 5.

Moreover, Payton never filed allegations with NBCI's Prison Rape Elimination Act ("PREA") compliance office concerning any inappropriate sexual insults directed at him by Lamp or other NBCI staff. ECF 7-7 (Declaration of Anita Rozas, Social Work Supervisor and PREA Compliance Manager at NBCI), at ¶¶ 1, 3-5.

## II. Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[4]

[4] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pon de Nemours v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)) And, "to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell*

---

Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

*Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 Fed. Appx. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Payton has not requested additional material needed to respond to defendant's Motion, nor has he filed an affidavit under Rule 56(d), suggesting that additional discovery is needed.

Moreover, I am satisfied that it is appropriate to address defendant's Motion as one for summary judgment, as it will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). But, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United*

*States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## III. Discussion

### A. Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a federal constitutional right or a right secured by federal law. *See Baker v. McCollan*, 473 U.S. 137 (1979). "[A] prisoner may have a state-created liberty interest in certain prison confinement

conditions," warranting "Due Process protections." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). The Eighth Amendment also "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *see also Raynor v. Pugh*, ____ F.3d ____, 2016 WL 1056091, at *2 (4th Cir. March 17, 2016) (noting that the Eighth Amendment imposes "certain basic duties on prison officials," including "humane conditions of confinement. . . ."); *Makdessi v. Fields*, 789 F.3d 126 (4th Cir. 2015) (observing that the Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement).

To be sure, "[t]he Constitution 'does not mandate comfortable prisons[.]'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). However, conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes*, 452 U. S. at 347. Notably, "evolving precepts of humanity and personal dignity animate the Eighth Amendment" and guide the courts "in determining whether an alleged harm is sufficiently deleterious to satisfy the objective component of an Eighth Amendment claim." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). Yet, "only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim. Conversely, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347.

In *Shakka*, the Fourth Circuit explained: "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that '*subjectively* the officials act[ed] with a sufficiently culpable state of mind." *Shakka*, 71 F.3d at 166 (italics in original; internal

quotations and citation omitted; brackets in *Shakka*); *see also Raynor*, 2016 WL 1056091, at *3. The "requirements to state a claim" spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

Notably, "[t]he showing necessary to demonstrate that the deprivation of which a prisoner complains is serious enough to constitute cruel and unusual punishment 'varies according to the nature of the alleged constitutional violation.'" *Shakka*, 71 F.3d at 166 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 298. Actual knowledge of the risk of harm to the inmate is required. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001). In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. North Carolina Dept. of Corrections,* 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) ("It is not enough that the officers should have recognized it."). As the Fourth Circuit has explained: "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*,

511 U.S. at 844); *see also Jackson v. Lightsey*, 775 F.3d, 170, 178 (4th Cir. 2014) ("To show an Eighth Amendment violation, it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction.") (Emphasis in *Jackson*). This requires proof that the prison official knew of or was aware of the inmate's need and disregarded an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 837. Put another way, for liability to attach based on a violation of the Eighth Amendment, the law "requires consciousness of a risk . . . ." *Id.* at 840.

The Fourth Circuit has characterized the standard as an "exacting" one. *Lightsey*, 775 F.3d at 178. It explained in *Lightsey*, in the context of a claim concerning a medical need, that deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Nevertheless, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice*, 58 F.3d at 105; *see Makdessi*, 789 F.3d at 133. And, "[a] prison official's subjective actual knowledge [of a risk] can be proven through circumstantial evidence . . . ." *Makdessi*, 789 F.3d at 134.

"[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993); *see also Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim

regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003); *see also Odom v. South Carolina Dept. of Corrections*, 349 F. 3d 765, 770 (4th Cir. 2003).

Defendant raises three affirmative defenses. I shall discuss each, in turn.

**B. Affirmative Defenses**

**1. Qualified Immunity**

Defendant asserts entitlement to qualified immunity, arguing that his conduct did not violate any clearly established constitutional right of which a reasonable public official should have known. ECF 7-1 at 17-18. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *see also Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Prison officials need not possess "the legal knowledge culled 'by the collective hindsight of skilled lawyers and learned judges,' but instead only 'the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct.'" *Johnson v. Caudill*, 475 F.3d 645, 650 (4th Cir. 2007) (quoting *Jackson v. Long*, 102 F.3d 722, 731 (4th Cir. 1996)). Nevertheless, the Eighth Amendment claim raised here concerning conditions of confinement was clearly established in *Rhodes v. Chapman*, 452 U. S. 337 (1981). Thus, defendant cannot claim qualified immunity.

**2. Sovereign Immunity**

Defendant contends that he is immune from suit for any claims brought against him in his official capacity, under principles of sovereign immunity. ECF 7-1 at 10-11.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." The

Eleventh Amendment did not *create* sovereign immunity; rather, it *preserved* the sovereign immunity that the states enjoyed prior to the formation of the Union. *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011).

The preeminent purpose of state sovereign immunity is to accord states the dignity that is consistent with their status as sovereign entities. *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002). Thus, under the Eleventh Amendment, a private individual is barred from bringing a suit against a state in federal court to recover damages, unless the state has waived its sovereign immunity or Congress has abrogated its immunity. *See generally Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011). In addition, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Put another way, states and their officers, sued in their official capacities, are not "persons" subject to suit for money damages under Section 1983. *Id.* Thus, sovereign immunity precludes a private individual from suing an instrumentality of a state (also referred to as an "arm of the state"), absent waiver or a valid congressional abrogation of sovereign immunity. *See Coleman v. Court of Appeals of Md.*, ___ U.S. ___, 132 S. Ct. 1327, 1333 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the

absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001); *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005).

There are several exceptions to the Eleventh Amendment bar. *See, e.g., Equity In Athletics, Inc. v. Department of Education*, 639 F.3d 91, 107 n. 13 (4th Cir. 2011) (listing exceptions). For example, the Eleventh Amendment does not prevent private individuals from bringing suit against State officials for prospective or declaratory relief for ongoing violations of federal law. And, the State of Maryland has waived its sovereign immunity for certain types of cases. *See* Md. Code (2014), § 12-201(a) of the State Government Article. But, it has not waived its immunity to suit in federal court in the context of this case.

As indicated, under the Eleventh Amendment, a state includes its agencies and departments. *See Penhurst*, 465 U.S. at 100 (stating that, in the absence of consent, the Eleventh Amendment bars suit against a State or one of its agencies or departments). Therefore, Payton's claim for monetary damages against Lamp, in his official capacity, is barred by Eleventh Amendment immunity.

**3. Exhaustion of Administrative Remedies**

Defendant asserts that those claims that have not been properly presented through the administrative remedy procedure must be dismissed pursuant to 42 U.S.C. §1997e. ECF 7-1 at 7-10.

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e *et seq.* ("PLRA"), provides, in pertinent part:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219; *see Blake v. Ross*, 787 F.3d 693, 698 (4th Cir. 2015), *cert. granted*, 136 S. Ct. 614 (2015) (review of

whether there is common law "special circumstances" exception to the PLRA that relieves mandatory obligation to exhaust administrative remedies where plaintiff erroneously believes exhaustion was satisfied through participation in an internal investigation); *see also Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies).

Administrative exhaustion is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F.Supp.2d 523, 530 (D. Md. 2003), *aff'd* 98 Fed. Appx. 253 (4th Cir,. 2004); *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

However, "the exhaustion requirement is not absolute." *Blake*, 787 F.3d at 698. There may be "'special circumstances' in which . . . failure to comply with administrative procedural requirements may nevertheless have been justified.'" *Id.* (citation omitted); *but see Blake*, *supra*, *cert. granted*, 136 S. Ct. 614 (2015). Nevertheless, an inmate ordinarily must follow the required procedural steps in order to exhaust his administrative remedies. *Moore,* 517 F.3d at 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made

clear that exhaustion is now mandatory."). But, this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

The Fourth Circuit addressed the meaning of "available" remedies in *Moore*, 517 F. 3d at 725:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*See also Blake v. Ross*, 987 F.3d at, 698-701.

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has made an "administrative remedy procedure" ("ARP") available to Maryland State prisoners, within the meaning of 42 U.S.C. § 1997e(a), for the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." Md. Code, Correctional Services Article ("C.S.") § 10-206(a); *see generally* C.S. §§ 10-201 *et seq.*; Code of Maryland Regulations ("COMAR") 12.07.01.01(B)(1) (defining ARP). Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." COMAR

12.07.01.01B(8).[5] An inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; DCD 185-002 (effective August 27, 2008). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).

In Maryland, filing a request for administrative remedy with the warden of the prison is the first of three steps in the ARP process. *See* COMAR 12.07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR 12.07.01.05C; *Blake v. Ross*, 787 F.3d at 697. If the appeal is denied, the prisoner has 30 days to file a grievance with the Inmate Grievance Office. *See* C.S. §§ 10-206, 10-210; COMAR 12 07.01.03; COMAR 12.07.01.05B.

---

[5] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id*. at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," C.S. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

Complaints are reviewed preliminarily by the IGO. *See* C.S. § 10-207; COMAR 12.07.01.06A. If the complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.J. § 10-208(c); COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. C.S. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)-(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. But, an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."), *cert. denied*, 537 U.S. 949 (2002).[6]

Thus, Payton's claims must be dismissed if defendant raises the affirmative defense and

---

[6] But *see* Md. Code, Cts. & Jud. Proc. Art. § 5-1003(a)(3) of Courts and Judicial Proceedings Article ("Judicial review following administrative consideration shall be the exclusive judicial remedy for any grievance or complaint within the scope of the administrative process . . . .").

also proves that Payton has failed to exhaust available remedies. *See Jones*, 549 U.S. at 216 – 17 (failure to exhaust is an affirmative defense and inmates are not required to demonstrate exhaustion in their complaints). As noted, the PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F. 3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Payton properly exhausted his claim concerning the delivery of his underwear. However, none of his remaining claims concerning additional clothing, the alleged assault by Lamp, or the mildewed condition of his orange segregation jumpsuit and bedding have been exhausted. And, nothing in the record suggests that Payton was without adequate clothing or, as he states in his complaint, that he was forced to sit in his cell "bare naked." ECF 1 at 3.

## IV. Conclusion

Violation of the Eighth Amendment based on improper conditions of confinement cannot be supported given the undisputed facts of this case. Summary judgment will be entered in favor of defendant in a separate Order to follow.

April 15, 2016
Date

________/s/________________________
Ellen L. Hollander
United States District Judge